IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES DONALD JACKSON,

    Plaintiff,

v.

CO YEAGER; SGT. GOUCHER;
CAPTAIN LYTLE; J.E. DEACON; ASST.
SUPT. T. RIDLEY; CAPT. S. BOSTON;
SIU SHORT; ASST. I. Q. M. NOFZIGER;
ADMIN B. AMSBERRY; LT. T. STUART,

    Defendants.

No. 2:18-cv-00816-MO

OPINION AND ORDER

MOSMAN, J.,

This case comes before me on Defendants' Motion for Summary Judgment [ECF 54]. Plaintiff James Donald Jackson is an inmate at Two Rivers Correctional Institution ("TRCI") under the custody of the Oregon Department of Corrections ("ODOC"). Mr. Jackson brings this action *pro se*, alleging under 42 U.S.C. § 1983 that Defendants (who are all various employees of ODOC): (1) violated his Eighth Amendment rights by failing to protect him from another inmate and (2) violated his Fourteenth Amendment rights to due process by subjecting him to an unfair disciplinary hearing that resulted in him being sanctioned with a 45-day placement in the

Disciplinary Segregation Unit ("DSU"). Compl. [ECF 2] at 5-7.[1] For the reasons explained below, I GRANT Defendants' motion for summary judgment.

**BACKGROUND**

Mr. Jackson alleges that in late 2015, while he was being housed in the DSU, an inmate named Andrew Wilkerson lived in a cell on the floor directly above Mr. Jackson's own cell and made threats to Mr. Jackson through a vent that traveled between their cells.[2] Compl. [2] at 6. After receiving these threats, Mr. Jackson sent two inmate communication forms ("kytes") to Defendants Kami Short and Tye Stewart[3]: one dated December 17, 2015, the other dated December 21, 2015. Jackson Decl. [ECF 44-1] at 2-3.[4] In the two kytes, Mr. Jackson described Mr. Wilkerson's hostility and explained that Mr. Wilkerson had threatened that he would assault Mr. Jackson "on sight." *Id.* He asked prison staff to take appropriate precautions to protect his safety and requested to make a hotline call to the Inspector General. *Id.* at 2. In response, Ms. Short informed Mr. Jackson that she had spoken with Defendant Steven Boston, a correctional captain, about the matter and that she would set up the Inspector General call for the same day. *Id.*

To help prevent conflicts between inmates, Inmate Conflict Report forms are available in the housing units at TRCI. Harris Decl. [ECF 55] ¶ 12. Inmate Conflict Report forms are submitted to the TRCI Operations Captain who then investigates the allegations. *Id.* According to Defendants, although Mr. Jackson submitted kytes regarding Mr. Wilkerson's threats, he

---

[1] When citing to the Complaint, I cite to the ECF document page numbers.

[2] Defendants note that Mr. Jackson and Mr. Wilkerson were housed on separate tiers of the DSU. Harris Decl. [55] ¶ 14.

[3] Mr. Jackson misspells Mr. Stewart's last name as "Stuart."

[4] For this source, I cite to the ECF document page numbers.

never submitted an Inmate Conflict Report. *Id.* ¶ 13. In addition, between December 2015 and April 21, 2017, Mr. Jackson transferred between TRCI's general population and the DSU several times, and did not report any additional conflict between him and Mr. Wilkerson. *Id.* ¶ 14.

On April 21, 2017, Mr. Wilkerson allegedly ran up behind Mr. Jackson in an effort to attack him. Compl. [2] at 7. Mr. Jackson responded by striking at Mr. Wilkerson, and the two were eventually separated by prison staff and escorted to the DSU. Harris Decl. [55] ¶¶ 6, 7. Mr. Jackson alleges that he suffered injuries to his back and wrist. Compl. [2] at 5-6.

That same day, Defendant Lori Goucher, a correctional sergeant, filled out a misconduct report charging Mr. Jackson with Inmate Assault I. Deacon Decl. [ECF 56] ¶ 17. On April 27, 2017, Defendant James Deacon, a hearings officer, opened a disciplinary hearing to assess Mr. Jackson's conduct related to his altercation with Mr. Wilkerson. *Id.* Mr. Jackson acknowledged receiving copies of his misconduct report, a description of inmate rights at hearings, his hearing notice, and rules of prohibited conduct. *Id.* ¶ 18. During the hearing, Mr. Deacon denied Mr. Jackson's request to obtain additional video footage that purported to show where Mr. Wilkerson had traveled from immediately prior to their altercation on April 21. *Id.* at 87-89.[5] He also denied Mr. Jackson's request to call Mr. Stewart as a witness; Mr. Jackson wished Mr. Stewart to testify about whether he received Mr. Jackson's warnings (in the form of the 2015 kytes) about Mr. Wilkerson. *Id.* Mr. Deacon denied both requests because he did not find them relevant to any defense regarding Mr. Jackson's alleged assault violations. *Id.* At the conclusion of the hearing, Mr. Deacon found Mr. Jackson in violation of Inmate Assault II, a lesser offense, and sanctioned him to 45 days in the DSU with credit for time served, 14 days loss of privileges, and a $100 suspended fine. *Id.* ¶ 23.

---

[5] For this source, I cite to the ECF document page numbers.

Mr. Jackson requested administrative review of the disciplinary hearing. *Id.* ¶ 25. The Inspector General's office conducted a review and found that "there was substantial compliance with the rule, the finding was based upon a preponderance of the evidence and the sanction imposed was in accordance with the provisions set for[th] in the rules." *Id.*

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates no issue of material fact exists, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A party cannot defeat a summary judgment motion by relying on the allegations set forth in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Summary judgment thus should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

To determine whether summary judgment is proper, the court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281-82 (9th Cir. 1982).

## DISCUSSION

Defendants make three arguments for why summary judgment should be granted in this case: (1) There are no facts upon which a reasonable fact finder could conclude that any named defendant violated Mr. Jackson's constitutional rights; (2) Defendants are entitled to qualified

immunity; (3) Mr. Jackson did not administratively exhaust his claim that ODOC pits inmates against one another. Mot. Summ. J. [54] at 6. Because I agree that Mr. Jackson has not put forth facts which could establish that any defendant violated his constitutional rights, I do not reach the latter two arguments.

I.  **Whether there are facts that could establish a violation of Mr. Jackson's constitutional rights.**

### A. Mr. Jackson's Eighth Amendment Claim

Mr. Jackson alleges that Defendants violated his Eighth Amendment right to be free from cruel and usual punishment because they failed to protect him from Mr. Wilkerson after he alerted them to Mr. Wilkerson's threats. Compl. [2] at 5-6.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). When it comes to the second, subjective component, "deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835. Rather, a plaintiff must prove that "the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Id.*

Here, there is no evidence upon which a reasonable factfinder could conclude that any of the Defendants acted with deliberate indifference toward Mr. Jackson's safety. As described above, Mr. Jackson sent two kytes in late 2015 which described that another inmate, Mr. Wilkerson, had verbally threatened him while living on a separate tier of the DSU. In response to those kytes, Ms. Short discussed the matter with Mr. Boston and arranged for Mr. Jackson to

make a call to the Inspector General hotline about the matter. Over a year passed without incident. Mr. Jackson moved from the DSU to general population and back again several times. Between late 2015 and April 21, 2017, he never alerted Defendants to any new incident involving Mr. Wilkerson.

These facts, as alleged, show that (1) Mr. Jackson was verbally threatened by another inmate; (2) Defendants acknowledged and responded to that threat by, at a minimum, arranging for Mr. Jackson to call the Inspector General hotline; and (3) over a year passed without further incident before Mr. Wilkerson purportedly attacked Mr. Jackson. While Mr. Jackson believes the Defendants should have done more,[6] the alleged facts do not show that Defendants disregarded the threats made by Mr. Wilkerson in late 2015. Nor do they show that Defendants had any reason to believe that Mr. Wilkerson posed an excessive risk to Mr. Jackson's safety in April 2017, prior to the April 21 altercation. In other words, the evidence does not support a cognizable deliberate indifference claim.

### B. Mr. Jackson's Fourteenth Amendment Claim

In addition to his Eighth Amendment claim, Mr. Jackson also alleges that Defendants violated his Fourteenth Amendment rights to due process during his April 27, 2017, disciplinary hearing. Compl. [2] at 7. Specifically, he alleges two violations.[7] First, he alleges that Mr.

---

[6] Mr. Jackson argues that DOC Policy 40.1.12 required Defendants to submit an Inmate Conflict Report form to the Assistant Superintendent of Security after learning of Mr. Wilkerson's threats. Pl.'s Resp. [64] at 17. As Defendants point out, however, "[v]erbal exchanges between inmates in DSU do not automatically create a conflict." Harris Decl. [55] ¶ 10. Even if Mr. Wilkinson's threats were arguably a "[d]ocumented serious threat to personal safety" constituting an inmate-to-inmate conflict under the Policy, Mr. Jackson cites no authority showing that failure to comply with the Policy automatically gives rise to a deliberate indifference claim.

[7] Melissa Nofziger, the Assistant Inspector General who performed an administrative review of Mr. Jackson's disciplinary hearing, is also named as a defendant in this case. While it is unclear if Mr. Jackson is claiming he was denied due process in the administrative review

Deacon sanctioned him "without [just] consideration of security neglect." *Id.* at 4. He emphasizes Defendant Deacon's decision to deny his request to call Inspector Short as a witness, and to obtain video footage purporting to show Mr. Wilkerson's whereabouts immediately prior to the April 21, 2017, incident. *Id.* Second, he alleges that Defendant Goucher's misconduct report was inaccurate. *Id.* at 7. Defendants respond by arguing that Mr. Jackson's due process claim fails as a matter of law because (1) no constitutionally protected liberty interest was infringed, and (2) he received all process that was due.

The United States Supreme Court outlines the procedural due process requirements for prison disciplinary hearings in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). These requirements include: (1) written notice of the hearing at least 24 hours in advance; (2) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken; (3) the opportunity for the inmate "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (4) where the inmate is illiterate or the case particularly complex, prison officials should allow the inmate to seek the aid of a fellow inmate or provide substitute aid "in the form of help from the staff . . . ." *Id.*

Here, Mr. Jackson received all the process that was due at his disciplinary hearing. As an initial matter, as described above, Mr. Jackson acknowledged receiving advance written notice of the hearing and a copy of his misconduct report, which laid out the charges and the evidence relied upon in making them.[8] Mr. Jackson does not allege that the notice here was deficient. Nor

---

process, because Ms. Nofziger is named as a defendant I note that no due process violations occurred as part of the administrative review process. *See Woodroffe v. Oregon*, 2015 WL 2125908, *8 (D. Or. May 6, 2015).

[8] In addition, after the hearing, a "Finding of Fact, Conclusion, and Order" explaining the decision was also produced. Deacon Decl. [56] at 97.

does Mr. Jackson allege that the disciplinary case was particularly complex such that he needed assistance that was not provided.

Rather, as previously described, the crux of Mr. Jackson's due process claim is that he was unconstitutionally denied his right to call witnesses and to present documentary evidence. Mr. Jackson's argument here fails. As *Wolff* makes clear, the right of an inmate to call witnesses and to present documentary evidence is not unlimited. *See Wolff,* 418 U.S. at 566-67. Mr. Jackson wanted to introduce two pieces of evidence: (1) a video purporting to show Mr. Wilkerson's whereabouts prior to the altercation, and (2) testimony from Mr. Stewart regarding Mr. Jackson's warnings regarding Mr. Wilkerson's threats, and the efforts made by prison staff to address the threats. Deacon Decl. [56] at 86-88. Mr. Deacon denied these requests on the grounds that the requested evidence would not "substantially lessen the severity of the violations listed or constitute a defense to the charges." *Id.* at 88. In other words, Mr. Deacon ruled that the requested evidence was not relevant to any viable defense.

I agree with Mr. Deacon that the evidence sought by Mr. Jackson was irrelevant to the charges being adjudicated at the disciplinary hearing, and I hold that this constitutes a permissible reason to deny Mr. Jackson's request. Mr. Jackson requested the evidence at issue seemingly to bolster two arguments or theories: (1) that prison officials facilitated or encouraged inmates to attack other inmates, and (2) that prison officials ignored Mr. Jackson's warnings about Mr. Wilkerson. Even if those theories proved correct, they would not constitute a defense to the charge of inmate assault that Mr. Jackson was defending himself against. The first theory might be relevant if there was a question of who instigated the fight, but as Defendants note, it was never in dispute that Mr. Wilkerson was the instigator. Reply [67] at 8. As to the second theory, whether or not prison officials responded appropriately to Mr. Jackson's warnings is not

probative as to whether Mr. Jackson committed assault during his altercation with Mr. Wilkerson.

Separately, in his response to Defendants' motion, Mr. Jackson appears to allege another theory for how Mr. Deacon violated his due process rights: that Mr. Deacon failed to take into account mitigating factors in determining Mr. Jackson's sanctions, as purportedly required by OAR 291-105-0072(5). Resp. [64] at 13. This argument also fails. As Defendants explain, the regulation cited by Mr. Jackson *permits* but does not *require* that mitigating or aggravating factors be taken into account when arriving at a sanction. OAR 291-105-0072(5); Reply [67] at 7. Moreover, Mr. Jackson received a reduced sanction compared to the severity of the possible sanctions available given the offense committed by Mr. Jackson and Mr. Jackson's disciplinary record. Reply [67] at 7.

Finally, Mr. Jackson also alleges that Ms. Goucher, in authoring the misconduct report, inaccurately described which prison officials discovered the April 21, 2017, fight. Compl. [2] at 7. But as Defendants point out, Ms. Goucher's report was not inaccurate, and even if it was, Mr. Jackson fails to demonstrate how this inaccuracy constitutes a violation of due process. Mot. Summ. J. [54] at 13; Deacon Decl. [56] at 62.

In sum, Mr. Jackson has put forth no facts that demonstrate he received anything less than the process he was constitutionally due. Because Mr. Jackson received due process at his disciplinary hearing, I do not address whether the resulting sanctions constitute a deprivation of a constitutionally protected liberty interest, nor do I discuss Defendants' alternative arguments.

//

//

//

## CONCLUSION

For the foregoing reasons, I GRANT Defendants' Motion for Summary Judgment [54] as to all claims against all named Defendants. This case is therefore DISMISSED with prejudice. All pending motions are DENIED as moot.

IT IS SO ORDERED.

DATED this __19th__ day of February, 2020.

*[signature]*

MICHAEL W. MOSMAN
United States District Judge